UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARC THOMAS WALTER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | CASE NO. C12-1740JLR-MAT<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

## I. INTRODUCTION

This matter comes before the court on the Report and Recommendation of United States Magistrate Judge Mary Alice Theiler (R&R (Dkt. # 21)), and Plaintiff Marc Thomas Walter's objections thereto (Obj. (Dkt. # 22)). Having carefully reviewed the foregoing, all submissions filed in response and reply thereto, the balance of the record, and the governing law, the court ADOPTS the Report and Recommendation (Dkt. # 22) and DISMISSES Mr. Walters's complaint with prejudice (*see* Compl. (Dkt. # 3)).

ORDER- 1

# I. BACKGROUND

In 2009, Mr. Walter filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging disability beginning August 15, 2007. (Admin. Rec. App. 2 (Dkt. # 14-2) at 17.) Administrative Law Judge John P. Costello ("ALJ") reviewed the record, heard testimony from Mr. Walter and a vocational expert, concluded that Mr. Walter was not disabled, and denied his claims.[1] (*See id.* at 17-25.) Magistrate Judge Theiler recommended affirming the ALJ's decision and dismissing Mr. Walter's claims. (R&R at 1.)

---

[1] An ALJ uses a five-step process to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520 (2012). First, the ALJ considers whether the claimant is engaged in "substantial gainful activity." *See* 20 C.F.R. § 404.1520(a)(4)(i). The ALJ determined that Mr. Walter was not engaged in substantial gainful activity. (Admin. Rec. App. 2 at 19) Second, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If a claimant does not have a "severe impairment," then they are not disabled and the evaluation ends. *Id.* Here, the ALJ determined that Mr. Miller had a severe depressive disorder and a severe anxiety disorder. (Admin. Rec. App. 2 at 19.) Third, the ALJ considers whether the claimant's impairment(s) match an enumerated list of impairments qualifying the claimant as disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that Mr. Walter's impairments did not match the listed impairments. (Admin. Rec. App. 2 at 20.) A claimant who does not pass step three may nevertheless make out a *prima facie* case of disability by proving, at step four, that he or she is unable to perform his or her past work. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). Step four assesses a claimant's residual functional capacity ("RFC") to determine if the claimant is able to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv). If a claimant is able to perform his or her past work, the ALJ will deny the application. *Id.* Here, the ALJ determined that Mr. Walter had the residual functional capacity to "perform a full range of work" involving "simple, repetitive tasks" and that Mr. Walter "can have frequent interaction with coworkers and only occasional interaction with the general public." (Admin. Rec. App. 2 at 21.) The ALJ determined that Mr. Walter could perform his past relevant work as a kitchen helper. (*Id.* at 24.) Fifth and finally, the ALJ again considers the claimant's RFC to determine if he or she is able to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to perform other work, and there are a significant number of jobs involving that work available in the national economy, then the ALJ will deny the application. *Id.*; 20 C.F.R. § 404.1569. Here, the ALJ determined that Mr. Walter could perform cleaning or janitorial work. (Admin. Rec. App. 2 at 25.)

1    Mr. Walter was born in 1971.  (Admin. Rec. App. 2 at 36.)  He did not complete

2 high school, and has previously worked as a cook, dishwasher, and janitor.  (*Id.* at 21,

3 24.)  Mr. Walter complains of anxiety and depression.  (*Id.* at 40.)  He has had problems

4 with alcohol and drug abuse, which are now in remission, and he regularly attends

5 Alcoholics Anonymous meetings.  (*Id.* at 44-45.)  Mr. Walter lives in a clean and sober

6 house and shares a room with a roommate, with whom he reports socializing.  (*Id.* at 47-

7 48.)  He uses Facebook to socialize with family and occasionally goes to the library.  (*Id.*

8 at 47-48.)  Mr. Walter's mother reports that he calls her once a week, and they have

9 dinner once or twice a month.  (Admin. Rec. App. 6 (Dkt. # 14-6) at 31, 35.)  She reports

10 that he is able to shop for himself in grocery stores.  (*Id.* at 34.)

11    Mr. Walter has a long record of medical evaluations.  In 2008, therapist Steven

12 Erickson, M.Ed., supervised by psychologist Dr. W. Scott Mabee, Ph.D., evaluated Mr.

13 Walter.  (Admin. Rec. App. 7 (Dkt. # 14-7) at 76-77.)  Mr. Erickson recommended that

14 Mr. Walter "be placed in a position requiring limited [social] interaction."  (*Id.* at 76.)  In

15 January 2009, Mr. Erickson reported that Mr. Walter had "marked" social functional

16 limitations in a Department of Social and Health Services ("DSHS") report.  (*Id.* at 82.)

17 In June 2009, a DSHS Disability Determination Service report stated that Mr. Walter

18 "would do best away from the general public" but that "[h]e is able to have superficial

19 coworker interaction w/o high levels of cooperation."[2]  (*Id.* at 33.)  Dr. Seema Basnett,

20 M.D., however, reported in a DSHS evaluation in 2010 that all of Mr. Walter's social

21 ──────────

22    [2] The Report and Recommendation refers to this report as the "opinion of the State agency medical consultants."  (R&R at 6.)  The court will use this nomenclature.

ORDER- 3

functional limitations were "mild" or nonexistent. (*Id.* at 87.) Later in 2010, Dr. William Wilkinson, Ed.D., conducted a 45-minute evaluation of Mr. Walter, and reported his findings on a DSHS form. (*Id.* at 96.) Dr. Wilkinson concluded that Mr. Walter was "not capable of full time work with the usual demands, pressures, expectations . . . ." (*Id.* at 94.) Mr. Walter's self-reported symptoms feature prominently in Dr. Wilkinson's evaluation. (*See, e.g.*, *id.* at 93 ("He does not plan ahead, at his [Mr. Walter's] report. . . ."); *id.* at 92 ("Basis for rating: self report; interview behavior.").) Interpreting this report, the ALJ concluded that Mr. Walter's "mental status evaluation was actually pretty good" because Mr. Walter was "unremarkable in terms of memory, cognition, speech and behavior." (Admin. Rec. App. 2 at 23.)

From these records, the ALJ determined that Mr. Walter has a residual functional capacity ("RFC") that allows him to perform "simple, repetitive tasks" and "have frequent interaction with coworkers and only occasional interaction with the general public." (*Id*. at 21.) Using this RFC, the ALJ found that Mr. Walter could perform his past relevant work as a kitchen helper and other cleaning and janitorial work. (*Id.* at 24-25.) Thus, Mr. Walter did not have a disability, and his claim was denied. (*Id.* at 25.) Magistrate Judge Theiler recommended affirming the ALJ's ruling. (R&R at 1.)

## II.   STANDARD OF REVIEW

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court reviews de novo those

1 portions of the report and recommendation to which specific written objection is made.

2 *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

3   While review of a Report and Recommendation is de novo, the court must defer to the ALJ's findings and may set aside the Commissioner's denial of Social Security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal quotation marks and citations omitted)).

12   The court must examine the record as a whole and may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ determines credibility, resolves conflicts in medical testimony, and resolves any other ambiguities that may exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *Thomas*, 278 F.3d at 954. However, "to reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).

## II. DISCUSSION

Mr. Walter makes several objections to the ALJ's ruling as affirmed by Magistrate Judge Theiler. Mr. Walter argues that: (1) the ALJ improperly ignored the state agency physician's recommended social limitations (Obj. at 1); (2) Magistrate Judge Theiler and the ALJ improperly discounted Mr. Erickson and Dr. Mabee's assessment (Obj. at 4-6); (3) the ALJ improperly rejected Dr. Wilkinson's assessment (Obj. at 7); (4) the ALJ improperly discredited Mr. Walter's testimony (Obj. at 8); and (5) for these reasons, the RFC was erroneous, and the ALJ improperly denied the claim (Obj. at 8-10). The court considers each objection in turn.

First, Mr. Walter argues that the ALJ improperly "ignored" the state agency physician's opinion that Mr. Walter "would do best" away from the public and should only have "superficial" coworker contact. (Obj. at 1.) Magistrate Judge Theiler, however, correctly noted that "the ALJ's RFC is not necessarily inconsistent with the State agency opinion." (R&R at 6-7.) The ALJ gave the state agency assessment "substantial weight." (Admin. Rec. App. 2 at 23.) This indicates that ALJ's finding that Mr. Walter can have frequent co-worker interaction is not inconsistent with having only superficial contact. As Magistrate Judge Theiler noted, "the frequency of coworker interaction does not necessarily bear on whether the interaction will be superficial." (R&R at 7.) *See also Lind v. Astrue*, 530 F. Supp. 2d 456, 463 (W.D.N.Y. 2008) (distinguishing between frequent and superficial social contact). The state agency's

recommendation that Mr. Walter "would do best" away from the public is also consistent with the RFC finding that Mr. Walter should have "only occasional interaction with the general public." Furthermore, an ALJ does not err by failing to include a physician's recommendations, as opposed to specific functional limitations, in his RFC. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Valentine*, 574 F.3d at 691-92. It also was not improper for Magistrate Judge Theiler to note that Dr. Basnett's evaluation and "the entire RFC discussion as a whole" supported the ALJ's interpretation of the state agency evaluation. (*See* R&R at 7); *Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Thus, Mr. Walter's objections to the ALJ's treatment of the state agency evaluation fail.

Second, Mr. Walter argues that the ALJ improperly discounted Mr. Erickson and Dr. Mabee's evaluation of Mr. Walter. (Obj. at 4-6.) The ALJ, however, gave clear and convincing reasons supported by substantial evidence for only giving Mr. Erickson's evaluation "some weight." [3] (*See* Admin. Rec. App. 2 at 22.) The ALJ noted: (1) that

---

[3] Mr. Erickson holds a Masters of Education and is a state licensed mental health counselor. (Admin. Rec. App. 7 at 77.) As such, Mr. Erickson is not an "acceptable medical source," and the ALJ need only provide a germane reason for rejecting his evaluation. *See Fisher v. Astrue*, 429 F. App'x 649, 652 (9th Cir. 2011) (holding that a mental health counselor is not an acceptable medical source and an ALJ can discount her opinion by providing a germane reason); 20 C.F.R. § 404.1513(d)(1). The ALJ, however, does not mention that Dr. Mabee, Ph.D., endorsed Mr. Erickson's opinion. (Admin. Rec. App. 7 at 77). The ALJ erred by apparently failing to consider Dr. Mabee's endorsement of Mr. Erickson's evaluation. *See Morgan v. Colvin*, No. 12-35107, 2013 WL 3119825, at *2 (9th Cir. June 21, 2013) (holding that an ALJ was required to consider a doctor's affirmation of a non-medical opinion, and instructing the ALJ to do so on remand). The ALJ's error, however, is harmless because in discounting Mr. Erickson's opinion, the ALJ nevertheless offered clear and convincing reasons supported by

ORDER- 7

Dr. Basnett's evaluation differs from that of Mr. Erickson; and (2) that Mr. Walter's testimony and his mother's statement regarding his daily activities are inconsistent with Mr. Erickson's evaluation. (Admin. Rec. App. 2 at 22.) Mr. Walter argues that the ALJ improperly used Mr. Walter's daily activities, which include going out in public for various reasons, to discredit Mr. Erickson's evaluation. (Obj. at 5.) Mr. Walter cites *Vertigan v. Halter* in support of this argument. 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). *Vertigan*, however, dealt with the effect of physical pain on a plaintiff's ability to work, which is highly subjective and not at issue here. 260 F.3d at 1050 ("A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain . . . .") (emphasis in original). In any event, *Vertigan* did not hold that it is never acceptable to consider a plaintiff's daily activities in judging a plaintiff's credibility, *Vertigan*, 260 F.3d at 1049 ("The factors in [Social Security Ruling] 95–5p include daily activities and the adjudicator's personal observations of the claimant."), and numerous courts have done so. *See, e.g.*, *Fisher*, 429 F. App'x at 651 (holding that a plaintiff's daily activities and failure to seek treatment properly discredit her testimony regarding her mental health symptoms) (citing *Fair v. Bowen*, 885 F.2d

---

substantial evidence that would have been sufficient to discount the evaluation of an examining doctor. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding that an ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination").

597, 603 (9th. Cir. 1989)); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that a plaintiff's daily activities properly discount her testimony regarding her pulminary symptoms); *Carnes v. Comm'r of Soc. Sec. Admin.*, 291 F. App'x 51, 53-43 (9th Cir. 2008) (holding that a plaintiff's daily activities and inconsistent medical evidence properly discredit the plaintiff's testimony regarding his physical and mental limitations).

Furthermore, the *Fisher* court's treatment of medical testimony is more analogous to the instant case than *Vertigan*.[4] In *Fisher*, the court affirmed an ALJ discounting two medical opinions regarding the plaintiff's mental health issues. 429 F. App'x at 652. The ALJ found that the plaintiff's "daily activities" combined with other factors, such as inconsistent medical evidence or lack of specificity in the medical report, discounted each medical opinion. *Id.* Thus, *Fisher* demonstrates that daily activities combined with other considerations such as inconsistent medical testimony are sufficient grounds on which to discount medical opinions at least in the mental health context. *See also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (affirming an ALJ's judgment that the plaintiff's daily activities discounted a doctor's diagnosis of alcohol dependence). Like in *Fisher*, it was proper for the ALJ in the present case to find that

---

[4] *Vertigan* deals with discrediting the plaintiff's own testimony rather than that of a physician and deals with the impact of pain on a plaintiff's ability to work rather than social functional limitations or other mental health issues. 260 F.3d at 1049-50. Thus, *Fishe*r is the more appropriate precedent for this case. *See, e.g.*, *Gontes v. Astrue*, No. EDCV 12-0141-JPR, 2012 WL 6618330, at *7, 9 (C.D. Cal. Dec. 19, 2012) (citing *Vertigan* in its discussion of discounting the plaintiff's testimony based on daily activities but then citing *Fisher* in its discussion of discounting a medical opinion based on the plaintiff's daily activities).

ORDER- 9

Mr. Walter's daily activities combined with Dr. Basnett's inconsistent medical opinion discounted Mr. Erickson's evaluation.

Mr. Walter also argues that it was improper for the ALJ to use Dr. Basnett's opinion to discount Mr. Erickson's evaluation without fully adopting Dr. Basnett's opinion. (Obj. at 6.) It is reasonable, however, for an ALJ to note the contrast between two disability evaluations and arrive at an RFC between the two without fully adopting either. Although the ALJ does not fully adopt Dr. Basnett's evaluation, he does give it "some weight." (Admin. Rec. App. 2 at 22.) Dr. Basnett's conflicting opinion provides more than a scintilla of evidence to support discounting Mr. Erickson's opinion, and is thus sufficient. *See Thomas*, 278 F.3d at 954 ("Substantial evidence means more than a scintilla but less than a preponderance.") (internal quotation marks omitted); *see also Magallanes*, 881 F.2d at 753 (holding that conflicting medical evidence can "constitute substantial evidence" for rejecting a medical opinion). The ALJ is responsible for resolving inconsistencies in medical evidence. *Andrews*, 53 F.3d at 1039. Thus, the court adopts Magistrate Judge Theiler's conclusion that "the ALJ provided sufficient reasons to discount Mr. Erickson's opinions." (*See* R&R at 8.)

Third, Mr. Walter argues that the ALJ improperly rejected Dr. Wilkinson's opinion. (Obj. at 7.) The ALJ did not give great weight to Dr. Wilkinson's opinion that Mr. Walter could not sustain work activity because Dr. Wilkinson's opinion "appears to be based on the claimant's subjective statements" and Mr. Walter's "mental status evaluation was actually pretty good." (Admin. Rec. App. 2 at 23.) Mr. Walter disagrees that Dr. Wilkinson relied on Mr. Walter's self-reports. (Obj. at 7.) Mr. Walter's self-

reports, however, feature prominently in Dr. Wilkinson's evaluation. (*See, e.g.*, Admin. Rec. App. 7 at 93 ("He does not plan ahead, at his report . . . ."); *id.* at 92 ("Basis for rating: self report; interview behavior.").) The ALJ's interpretation of Dr. Wilkinson's evaluation is reasonable even if it is not the only possible interpretation. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (internal quotation marks omitted). When the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *Thomas*, 278 F.3d at 954.

Fourth, Mr. Walter argues that the ALJ erred in discrediting his testimony regarding his symptoms because the ALJ's reasons for doing so were too broad. (Obj. at 8.) An ALJ must follow a two-step process to discredit a claimant's testimony: (1) the ALJ must determine if the claimant has presented medical evidence which could reasonably support the claimant's testimony; and (2) if the plaintiff passes the first step, the ALJ may discredit the plaintiff by offering "specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Magistrate Judge Theiler correctly concluded that the ALJ provided "clear and convincing" reasons for discounting Mr. Walter's credibility. (*See* R&R at 6.) The ALJ found that Mr. Walter's daily activities are inconsistent with his testimony about his social limitations, that Mr. Walter's behavior at the hearing was inconsistent with his testimony, and that Mr. Walter has been in treatment for only a short time and has missed several treatment sessions. (Admin. Rec. App. 2 at 23.) These reasons are sufficient to discredit Mr. Walter's

ORDER- 11

1 testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (to determine credibility, "the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities"). Thus, the court adopts Magistrate Judge Theiler's recommendation that the court should affirm the ALJ in discounting Mr. Walter's testimony.

Fifth, Mr. Walter argues that the ALJ's RFC was erroneous due to the ALJ's errors in weighing the medical evidence and Mr. Walter's testimony. (Obj. at 8-9.) For the above reasons, the court finds that the ALJ did not err in his treatment of the medical testimony and Mr. Walter's credibility. Thus, the court adopts Magistrate Judge Theiler's recommendation that "this assignment of error fails in light of the resolution of the previous assignment of error." (*See* R&R at 10.)

//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the court hereby ORDERS as follows:

(1) The court ADOPTS the Report and Recommendation (Dkt. # 21) in its entirety;

(2) The court DISMISSES Plaintiff's complaint with prejudice; and

(3) The court DIRECTS the Clerk to send copies of this Order to Plaintiff, to counsel for Defendant, and to Magistrate Judge Theiler.

Dated this 28th day of June.

JAMES L. ROBART
United States District Judge